### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**ALVIN DA' VON THOMPSON**                                      **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO. 3:12cv369-LRA**

**CHRISTOPHER EPPS, ET AL**                                      **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

The parties appeared and participated in an omnibus hearing before the undersigned United States Magistrate Judge on October 25, 2012, at the Jackson Federal Courthouse in Jackson, Mississippi. Alvin Da' Von Thompson ("Plaintiff" or "Thompson") appeared *pro se*; Defendants were represented by Keith Gates and Tommy Goodwin, Office of the Attorney General of the State of Mississippi, Jackson, Mississippi. On September 5, 2013, Defendants filed a Motion for Summary Judgment [29] which is now before the Court. Plaintiff's pleading filed on March 10, 2014, has been considered in response to the motion, as well as his sworn testimony at the hearing. After consideration of the motion, the supporting pleadings, and the applicable law, the Court finds that the motion of Defendants is well-taken and should be granted.

### I. Plaintiff's Claims

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Plaintiff was housed as a convicted inmate in the custody of the Mississippi Department of Corrections [MDOC] in the Central Mississippi Correctional Facility in Pearl, Mississippi, in 2012. According to Plaintiff, on January 12, 2012, he received a Rules Violation Report [RVR] for having a

cellphone, and the phone was not his.  The emergency response team did a shakedown of his zone on that date, and everyone's property was scattered on the floor.  Approximately 90 inmates live on the zone, with no individual cells.  Plaintiff was asked if certain shoes were his, and he told the officer they were not his.  Yet a phone was in one of the boots they said were his, and the officer wrote him up for it.  He tried to tell the officer they were not his boots, but he was written up anyway.

Plaintiff did appeal the RVR.  He did have a hearing, but it was not conducted until the eighth working day after the incident.  According to procedure, Plaintiff asserts that it should have been conducted within seven working days.  Plaintiff contends that no investigation occurred within 24 hours, as it should have, because no investigator ever talked to him.  Plaintiff tried to tell the hearing officer (Defendant Summerville) these facts at the hearing, but she just told him to appeal it.  Plaintiff wanted to call witnesses, but he was not allowed to do so.  He completed all the steps for appeal, but nobody ever really listened.

According to Plaintiff, the RVR damaged him because he lost privileges, including his trusty earned time and the loss of his job.  He was placed in another job, ground maintenance for the canine unit; this job assignment was considered punishment, and he could not get earned time for that job.  After that, on March 19, 2012, he was reclassified to go to a special unit for only prisoners who are found in possession of a cellphone; this unit was not created until February 15, 2012.  A prisoner assigned to that unit cannot work outside of the building.  Plaintiff had to start anew trying to complete two months as

2

RVR free.  The conditions of the housing are poor— he had to sleep by a vent that was welded shut, so the filter could not be changed.  Water leaked all over the bathroom.  The food was not sanitary.  He was denied religious services.  The unit is dangerous, and at least three other inmates have been stabbed.  It is actually a gang unit.  There are no televisions or other electronics in the unit.   A prisoner is given no hygiene products unless he buys them in the canteen.

Thompson testified that it was Defendant Studaway who found the cellphone and wrote the RVR.  Defendant Summerville was the original RVR hearing officer, and she served him his RVR after eight working days.  Defendant Ward is the person who says that she investigated the RVR; Plaintiff has never met her, as she did not interview him.

According to Plaintiff, he has been set back for a total of about eight months, as he lost the earned time he would have gotten, as well as the time already accumulated.  As relief, he asks that the RVR be removed from his file; that he be returned to A custody; that his earned time be restored.  Specifically, his request for relief contained in the Complaint, pages 4, 7-8, is quoted as follows:

> Premise being considered based on the facts the remedy I seek is restoration to my custody and status that I was in prior to 1/24/2012.  Supplementation of all time lost from institutional job assignment in the form of MET time I would of accumulated from then to present a total of 40 plus days as well as 40 plus more days of MET that I would have earned by participating in the Chaplain Dept. Bible Study program. Also to have RVR #1227655 removed from my working file. I also request that the double jeopardy punishment for cellphone RVRs be investigated, examined, acknowledged, and put to a stop to this cruel and unusual punishment and

> practices of deliberate indifference.  I request that all MET
> and earn-time be restored immediately and that I be returned
> to minimum non-community custody.  The facts listed and
> errors and neglect warrant such relief as requested and
> deemed necessary by Your Honor.

Thompson was allowed to amend to state that he only sues Defendants Preletia Studaway (ERT Officer), Merrilyn Summerville (CMCF Area 1 Hearing Officer), and Vicki Ward (CMCF 1A Investigator) in their individual capacities, not in their official capacities [22].  Apparently, the remaining Defendants, Christopher Epps (MDOC Commissioner), Emmit Sparkman (Deputy Commissioner), and James Holman (Superintendent of CMCF) are sued in their official capacities.

Thompson was also allowed to amend to clarify the relief he seeks [21].  In this pleading, he amended to ask for monetary damages in addition to injunctive and declaratory relief.

At the omnibus hearing, Defendants made an *ore tenus* motion to dismiss Thompson's claims regarding religious services, food, dangerous living conditions in the cellphone unit, and his challenges to being punished again by being housed in that unit.  Plaintiff admitted that his ARP did not cover those issues, and that he had not exhausted his administrative remedies on these claims.  In support of their request to dismiss on this basis, Defendants have submitted Thompson's ARP file as Exhibit A to their Motion for Summary Judgment [29-1].

## II.  Standard of Review

"Summary judgment is appropriate if the moving party can show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *United States v. Renda Marine, Inc.,* 667 F.3d 651, 655 (5th Cir.2012) (quoting Fed.R.Civ.P. 56(a)).  "A factual dispute is 'genuine' where a reasonable party would return a verdict for the nonmoving party."  *Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273, 282 (5th Cir.2003) (quoting *Lukan v. North Forest Indep. Sch. Dist.,* 183 F.3d 342, 345 (5th Cir.1999). When considering a summary judgment motion, a court "must review all facts and evidence in the light most favorable to the non-moving party."  *Juino v. Livingston Parish Fire Dist. No. 5,* 717 F.3d 431, 433 (5th Cir.2013).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir.2003) (citing *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir.2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.2002)).

## III.  Discussion

### A.    Unexhausted Claims

The Court finds that all of Thompson's claims, other than his claim that his RVR conviction violated due process, must be dismissed due to his failure to exhaust his administrative remedies.  His certified ARP file contains the RVR regarding his conviction for the cellphone, and no other ARPs exist.  Plaintiff confirmed at the omnibus hearing that he knew he had "none of that" in his ARP, referring to the conditions in the cellphone unit.

The Fifth Circuit has confirmed that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice,* 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez*).   Accordingly, only the properly exhausted claim that his cellphone possession conviction violated Due Process shall be considered herein; the unexhausted claims shall be dismissed.

**B.     Eleventh Amendment Immunity**

Any claim for money damages against the Defendants in their official capacity is barred by the Eleventh Amendment.  A claim 'against a state official that is in fact a [claim] against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984).  A cause of action "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989).  A state that has not consented to federal jurisdiction "is immune from suits brought in federal court by her own citizens as well as by the citizens of another state." *Pennhurst,* 465 U.S. at 100.

Thompson's official capacity claims against Defendants Epps, Sparkman, and Holman are essentially claims against the State of Mississippi.  Mississippi has not consented to suit in this Court or otherwise waived its immunity; therefore, neither it nor Defendant prison

officials can be held liable for money damages.[1]   Thompson's claims for monetary damages against the Defendants in their official capacities must be dismissed.  Further, any claim for injunctive relief must also be dismissed because the *Ex Parte Young* exception does not apply.

In *Ex Parte Young,* the Supreme Court recognized a narrow exception to Eleventh Amendment immunity which allows a state official to be sued in his or her official capacity for injunctive relief.  209 U.S. 123, 159-160 (1908).  "This exception strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law." *McKinley v. Abbott,* 643 F.3d 403, 406 (5th Cir.2011).  A state official can be sued in his or her official capacity for injunctive relief under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14 (1985) (citing *Ex parte Young,* 209 U.S. at 159-160).

In this case, Thompson  seeks primarily retroactive injunctive relief.  He requests that the RVR at issue be removed from his prison record and the consequences revoked.  Since he does not seek prospective relief, the *Ex Parte Young* exception does not apply in this case. Accordingly,  Defendants are entitled to summary judgment on the claims for money and injunctive relief asserted against them in their official capacities.

---

[1] *See Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir.2002) (the Eleventh Amendment bars claims for money damages asserted against prison officials in their official capacities).

### C.   Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Easter v. Powell,* 467 F.3d 459, 462 (5th Cir.2006) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  "This entitlement, qualified immunity, is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (stating that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" under certain circumstances).

For a government official to be found entitled to qualified immunity, a two-part test is used: a finding that  "(1) the plaintiff failed to state a constitutional claim or (2) the defendant's conduct was objectively reasonable in light of the clearly established law." *Easter,* 467 F.3d at 462.  Once the defense of qualified immunity is raised, "the burden shifts to the plaintiff who may rebut entitlement to immunity by demonstrating that 'the official's allegedly wrongful conduct violated clearly established law.'"  *Sama v. Hannigan,* 669 F. 3d 585, 591 (5th Cir.2012) (quoting *Kovacic v. Villarreal,* 628 F.3d 209, 211-12 (5th Cir.2010)).

In determining whether Thompson has stated a constitutional claim, the Court must review the evidence used to support the RVR. [See ARP file, 29-1].  The initial RVR was written by Defendant Officer Precetia Studaway.  She wrote:

> On the above date (1/12/2012) at approximately 1400 hours, I ERT Precetia Studaway conducted a property search on Offender Alvin Davon Thompson #123907, I (Studaway) did find a LT AT&T Black cell with Sims card in Offender Thompson's shoe, Offender Alvin Thompson #123927 was advised that would receive an RVR for this infraction.

[29-1, p. 9].

Merrilyn Summerville was the hearing officer for the RVR. She noted that the incident was investigated by "V. Ward", that Thompson's statement was that he was "not guilty," but that he was found guilty due to "evidence presented at the hearing." Presumably, this was the testimony of Officer Studaway, along with any evidence revealed by the investigator, Defendant Ward. When Thompson appealed, he received his First Step Response dated March 2, 2012, based upon Defendant Summerville's statement that she saw "no reason to change my decision." [29-1, p. 11].

Thompson appealed, complaining that the hearing was conducted on the eighth working day afer the offense, instead of the seventh working day, violating MDOC policy. Additionally, Thompson charges that the investigator failed to interview him or give a factual basis for her response, and that the hearing officer did not give a reason for her findings. Thompson claimed that had she investigated in a timely manner, she would have found that the boot in which the cellphone was found was not his size.

Thompson appealed, stating that "this whole RVR was served and heard in violation of several MDOC policy and procedures which are written in original ARP. Failure to examine all the evidence...." [29-1, p. 12]. The Second Step Response was issued by Superintendent James Holman, dated April 17, 2012. His response stated in part as follows:

9

> ... You presented no new evidence to reverse the findings.
> There were no administrative errors found on the original rule
> violation report.
>
> Disciplinary staff heard your RVR and you were found guilty of
> the specific charges against you.
>
> My investigation determined that all necessary due process
> requirements were adhered to and all applicable policies and
> procedures were followed.  Therefore, the rule violation will
> remain a part of your file.

[29-1, p. 16].

Thompson claimed that CMCF officers searched his cell during a "shakedown" of the building.  He was asked if the shoes were his, and he replied "no."  However, Officer Studaway still issued the RVR, believing that the shoes were either his or that he had put the cellphone in the shoes.  Thompson concedes he was given notice of the hearing, had a hearing, and was allowed to testify regarding the situation.  He contends he was not allowed to bring witnesses, but he did not name any witnesses he could have brought whose testimony would have changed the findings.  He says he was not interviewed during the investigation by Defendant Ward, but he was allowed to give his testimony at the hearing. He charges that the shoe sizes should have been compared.

Due Process's fundamental requirement is that the prisoner be granted the opportunity be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).  This Court must determine first whether there has been a "liberty or property interest which has been

interfered with by the State," and then determine whether that process "was constitutionally inadequate." *Zinermon v. Burch,* 494 U.S. 114, 125 (1990).

In reviewing the record, this Court finds that Thompson has not shown he was denied Due Process through the ARP process. He has merely shown that he disagrees with the ruling at his hearing and on appeal. Yet, prisoners do not have a protected liberty interest in having grievances resolved in their favor or to their satisfaction. *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005). Thompson charges that not all MDOC policies were followed, and the Court takes this as true. This still does not rise to the level of a constitutional violation, however, as "a prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process." *Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Thompson denies that the shoe was his. Even he had been able to show that the shoe was not his, due to size, that fact along would not have exonerated him. The Court shall accept that his shoe size may have different from the shoe which had the cellphone. Certainly during a shakedown, inmates with phones in their possession could attempt to hide them in someone else's shoes. The reviewing officers found that there was no new evidence which would have caused the result to be different. The reason for the one-day delay for the hearing was due to "holiday/weekend," according to Defendant Summerville's findings. Thompson had notice of the hearing, could testify, and was given two appeals in the ARP process. He never named any persons during these appeals whose testimony would have

exonerated him.  Although he claims he was not allowed witnesses, he does not name witnesses or recite or describe their proposed testimony.

The United States Supreme Court has held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced ....'" *Superintendent, Mass. Correctional Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985) (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106 (1927).  The evidence in this case was Officer Studaway's testimony that she conducted a search and found a cellphone that she believed to be Thompson's in a shoe near his belongings.  This evidence was affirmed by Defendants Summerville and Holman and is supportive of the findings of guilt. Fundamental fairness does not require this Court to set aside decisions of prison administrators that "have some basis in fact."  *Hill,* 472 U.S. at 456.  The courts cannot retry every prison disciplinary dispute; rather, the court may act only where arbitrary or capricious action is shown.  *Reeves v. Pettcox,* 19 F.3d 1060, 1062 (5th Cir. 1994).  Prison disciplinary decisions will be overturned only where there is no evidence whatsoever to support the prison official's decision.  *Id.*

The Court finds that Thompson does have a due process right to not having his trusty time taken away, although he has no due process rights regarding his remaining punishments, the loss of privileges for 30 days or being housed in a special unit.  *Sandin v. Conner,* 515 U.S. 472, 484 (1995).  However, the record confirms that there was evidence to support the

12

conviction, and due process requirements were satisfied.  He was given notice of the charges and the hearing, allowed an opportunity to testify, and given two separate appeals.  Under the circumstances of this case, this satisfies due process.  No constitutional violation has been stated, and Defendants are entitled to qualified immunity from this civil suit.

### D.  Thompson's claims are barred by *Heck v. Humphrey*

As an alternative basis for dismissal, the Court finds that Thompson's claims are also barred by *Heck v. Humphrey,*  512 U.S. 477, 486-87 (1994).  In *Heck*, the Supreme Court held that no cause of action exists under § 1983 when judgment for a plaintiff would "necessarily imply" that his conviction or sentence was invalid, unless the conviction or sentence has already been invalidated.  *Id.*  To demonstrate that his conviction or sentence has already been invalidated, the plaintiff may show that it has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or questioned by the issuance of a writ of habeas corpus.  *Id.*  In the absence of one of these events, there is no cause of action, even if the plaintiff has successfully exhausted his state remedies.  *Id.* at 489.

Thompson's primary requests for relief are injunctive and declaratory in nature.  He asks this Court to restore him to the custody status that he was in prior to January 24, 2012.  He also asks that the Court direct that his MET time be supplemented for all the time he lost due to his job change, a total of over 40 days.  He requests that the RVR be removed from his record and that his "double punishment," due to his placement in the cellphone unit be investigated.  He requests that all of his earned time be restored immediately and that he be

13

returned to minimum non-community custody.  Thompson testified at the hearing that he has

a "total set back of about eight months" of delay in being released from prison.

The RVR states that Thompson's punishment was 180 days of trusty time and the loss

of all privileges for 30 days. [29-1, p. 9].  According to Thompson, the actual effect of

receiving the RVR was that he lost his job, causing him to forfeit being able to accumulate

MET time.  He also lost his custody status and the ability to earn trusty time.

As stated, a § 1983 claim that challenges the fact or duration of a state sentence "is

barred (absent prior invalidation) . . . if success in that action would necessarily demonstrate

the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82

(2005). Thompson's claims are barred by the ruling in *Heck* because he has failed to assert

or present proof that his "conviction" on the RVR has been invalidated.  Thompson has not

only asked for monetary damages, but he has also asked for restoration of all or some of his

180 days of trusty time.  The restoration of good time relief, if granted, would result in

Thompson receiving an accelerated release.  As such, a § 1983 civil action is not the proper

vehicle to pursue that request.  *See Clarke v. Stalder,* 154 F.3d 186, 189 (5th Cir. 1998) (en

banc), cert. denied, 525 U.S. 1151 (1999); *Wilkinson v. Dotson,* 544 U.S. 74, 78 (2005) (a

prisoner cannot use §1983 to challenge the fact or duration of his sentence).  Thompson must

pursue his request for the restoration of good time credit through a petition for habeas corpus

relief which requires him to exhaust his available state remedies.  *See Edwards v. Balisok,*

520 U.S. 641, 648 (1997) (habeas corpus is the exclusive remedy for a claim of restoration

of good time credits because "[t]he principal procedural defect complained of by respondent

14

would, if established, necessarily imply the invalidity of the deprivation of his good-time credits" and would imply a speedier release from prison).

## IV.  Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

That Defendants' Motion for Summary Judgment [29] is hereby **GRANTED**.

IT IS FURTHER ORDERED that the Complaint is dismissed with prejudice, and a separate Final Judgment in favor of all Defendants shall be entered on this date.

SO ORDERED this the 30th day of June, 2014.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE